### STATE v. DOCK McCOY.

(Filed 22 August, 1952.)

**1. Criminal Law § 67c—**

In capital cases the Supreme Court will review the record and take cognizance of prejudicial error *ex mero motu.*

**2. Homicide § 27a—**

In a homicide prosecution, instructions of the court that the State had offered evidence of a threat made by defendant to kill deceased, that deceased was stabbed from the rear, and that while defendant and deceased were fighting, deceased's wife was begging defendant to spare her husband's life, *held* prejudicial when such statements are not supported by the evidence.

**3. Criminal Law § 53d—**

While an inaccurate statement of facts contained in the evidence should be called to the court's attention in apt time, where an instruction contains a statement of material fact not shown in the evidence, it must be held for reversible error even though not called to the court's attention.

**4. Homicide § 16—**

Proof by the State that defendant intentionally inflicted a wound with a deadly weapon, causing death, raises the presumptions that the homicide was unlawful and was committed with malice, constituting murder in the second degree, with the burden upon the State to show premeditation and deliberation in order to constitute the offense of murder in the first degree.

**5. Homicide § 27b—**

An instruction in a homicide prosecution to the effect that if the jury should find that at the time defendant struck the fatal blow defendant was so intoxicated that it was impossible for him to deliberate and premeditate, the law would reduce the grade of the offense from murder in the first to murder in the second degree, must be held for prejudicial error since there is no presumption of premeditation or deliberation and the burden was not upon defendant to show a reduction in the offense from first degree murder to second degree murder, but upon the State to establish premeditation and deliberation beyond a reasonable doubt.

APPEAL by defendant from *Moore, J.,* and a jury, November-December 1951 Term, SCOTLAND. New trial.

Criminal prosecution upon an indictment charging the defendant with the murder of one Raymond Hall.

The incidents leading up to the killing of Raymond Hall transpired at his home on 21 October, 1951. Present at the time were Hall, his wife, Amelia, their 11-year-old son, and Mary Alice Boyd, a blind sister of Amelia.

At about 11 o'clock in the forenoon, the defendant met Raymond Hall and his wife at the home of Hall's father, where they consumed about three quarts of liquor. Thereafter, the three crossed the highway to the home of Raymond Hall, and there the deceased and the prisoner drank more liquor. An argument developed between Hall and his wife over liquor which he claimed his wife had stolen and drunk. The argument passed from liquor to liver. Hall criticized his wife for not having cooked for him the liver he had purchased the night before. The defendant entered into this family argument and hot words followed. This argument in varying degrees of intensity continued until mid-afternoon, the defendant contending that Hall should not abuse his wife and Hall taking the position that it was none of the defendant's business. Amelia is a foster sister of the defendant and in his effort to shield her, he offered to take her home with him, if Hall no longer wanted her.

The bickering continued to the point where Hall threw a brick at the defendant, and both men ran out into the front yard, where they engaged in combat. Amelia followed the two men out of the house and in the fight McCoy was hit on the head and arm with an axe. Hall was cut in the neck in two or three places and hit by McCoy with an axe several times. McCoy then ran from the scene of the fracas and was observed by a deputy sheriff on the road some distance away. The officer went to the home and discovered the lifeless body of Raymond Hall in the front yard. A pocket knife was found near the body. The officer then overtook McCoy, who was still running, arrested him and took him back to the death scene. The officer observed that McCoy had been injured in the head and that blood was still running from the wound. McCoy told the officer that he and Hall had been fighting, but that he did not know that Hall was dead. The injury received by McCoy in the altercation was sufficient to produce partial paralysis in his right arm and side.

The arresting officer testified that McCoy had been drinking and that the wife of deceased was drunk. There was no evidence of a cessation of hostilities from the time the fight between the two men actually began and the moment the accused fled from the scene. McCoy contended that he neither cut Hall nor hit him with the axe.

From a verdict of guilty of murder in the first degree and a sentence of death, the defendant appealed, assigning errors.

*Attorney-General McMullan, Assistant Attorney-General Bruton, and Robert B. Broughton, Member of Staff, for the State.*

*Gilbert Medlin for defendant, appellant.*

VALENTINE, J. In this enlightened age the humanity of the law is such that no man shall suffer death as a penalty for crime, except upon conviction in a trial free from substantial error and in which the constitutional and statutory safeguards for the protection of his rights have been scrupulously observed. Therefore, in all capital cases reaching this Court, it is the settled policy to examine the record for the ascertainment of reversible error. *S. v. Watson,* 208 N.C. 70, 179 S.E. 455; *S. v. Stovall,* 214 N.C. 695, 200 S.E. 426; *S. v. Moore,* 216 N.C. 543, 5 S.E. 2d 719; *S. v. Williams,* 216 N.C. 740, 6 S.E. 2d 492; *S. v. Page,* 217 N.C. 288, 7 S.E. 2d 559; *S. v. Morrow,* 220 N.C. 441, 17 S.E. 2d 507; *S. v. Brooks,* 224 N.C. 627, 31 S.E. 2d 754; *S. v. West,* 229 N.C. 416, 50 S.E. 2d 3; *S. v. Garner,* 230 N.C. 66, 51 S.E. 2d 895. If, upon such an examination, error is found, it then becomes the duty of the Court upon its own motion to recognize and act upon the error so found. *S. v. Sermons,* 212 N.C. 767, 194 S.E. 469. This rule obtains whether the prisoner be prince or pauper.

With this principle as a beacon or polar star, we proceed to a discussion of the inadvertences which appear to have crept into the charge of the court.

After reviewing the testimony relating to the quarrel between the man and his wife into which the prisoner had intruded, his Honor told the jury that the State had offered evidence tending to show "that during the course of the argument as to whether or not the deceased's wife would leave with the defendant, the defendant made the statement that if the deceased 'messed up with him' that he was going to kill him before he left." The court further told the jury that the State's evidence tended to show that the defendant "stabbed him from the rear, whereupon the deceased fell to the ground." And further, that the State offered evidence tending to show "that while the defendant was stabbing the deceased and while he was striking the deceased with the axe, that the deceased's wife was begging the defendant not to kill her husband."

A careful examination of the record fails to disclose any evidence in support of the above quoted excerpts from the charge. "The court should never give the jury instructions based upon a state of facts not presented by some reasonable view of the evidence produced on the trial, nor upon a supposed state of facts." *S. v. Wilson,* 104 N.C. 868, 10 S.E. 315. Such instructions only tend to mislead and confuse the jury. While an inaccurate statement of facts contained in the evidence should be called to the attention of the court during or at the conclusion of the charge in order that the error might be corrected, a statement of a material fact not shown in the evidence constitutes reversible error. *S. v. Love,* 187 N.C. 32, 121 S.E. 20; *Smith v. Hosiery Mill,* 212 N.C. 661, 194 S.E. 83; *S. v. Wyont,* 218 N.C. 505, 11 S.E. 2d 473; *Curlee v. Scales,* 223 N.C. 788, 28 S.E. 2d 576; *Steelman v. Benfield,* 228 N.C. 651, 46 S.E. 2d 829; *Supply Co. v. Rozzell,* 235 N.C. 631.

Hence, instructions to the jury that the State had offered evidence of a threat by the defendant to kill deceased, that the prisoner stabbed deceased from the rear, and that while the defendant and deceased were fighting, the wife of deceased was begging for the life of her husband, were erroneous and highly prejudicial to the defendant. These instructions furnished a strong basis for a finding that a murder was committed in cold blood, after deliberation and over the importunities of deceased's wife, and must be held for error.

The court below further instructed the jury in part as follows:

"So I charge you, Gentlemen, that if you find from the evidence and beyond a reasonable doubt, that the prisoner killed the deceased at the time and place in question, but you also find at the time this fatal blow was struck, that the prisoner was drunk and intoxicated; that the intoxication of the prisoner at the time was so great as to render it impossible

for him to form the wilful, deliberate and premeditated intent to take the life of the deceased, that is, that the prisoner's mind and reason were so completely intoxicated and overthrown as to render him utterly incapable of forming a deliberate and premeditated purpose to kill, then he would not be guilty of murder in the first degree, but in that event the law would reduce the grade of the homicide from murder in the first degree to murder in the second degree. The mere intoxication of the prisoner will not excuse or palliate his offense unless he was in such a state of intoxication as to be incapable of forming this deliberate and premeditated intent. If he was, the grade of offense is reduced to murder in the second degree, but as I have already stated, this doctrine does not exist in reference to murder in the second degree nor as to manslaughter." This instruction also constitutes error.

The mere proof that a homicide was committed by defendant raises no presumption of murder in the first degree. Wherever the burden may rest on his plea of intoxication, the State must first offer testimony tending to show that the homicide was unlawful and was committed with malice and with premeditation and deliberation before defendant is put to any election as to what evidence, if any, he will offer.

Proof by the State that the defendant, with a deadly weapon, intentionally inflicted the wound which caused the death of deceased gives rise to two presumptions against him: (1) that the homicide was unlawful, and (2) was committed with malice. This constitutes murder in the second degree. If the State seeks a verdict of murder in the first degree, it must then offer evidence of premeditation and deliberation. The law never reduces the grade of a homicide from murder in the first degree to murder in the second degree for the simple reason that no evidence, however impelling in force, creates any presumption of premeditation and deliberation, save and except proof that the deceased was killed by defendant in the perpetration or attempted perpetration of a felony. *S. v. Dunheen,* 224 N.C. 738, 32 S.E. 2d 322.

The court, in effect, by the quoted instruction, charged the jury that if it found the defendant killed the deceased, then "mere intoxication" would not excuse or palliate the crime and defendant would be guilty of murder in the first degree, unless he has shown to the satisfaction of the jury that the intoxication "was so great as to render it impossible for him to form the wilful, deliberate and premeditated intent to take the life of deceased;" that only upon such finding would the law reduce the crime to murder in the second degree.

The proof required of the State in this instruction before the jury should consider defendant's evidence of intoxication is not sufficient to raise any presumption either of murder in the first degree or murder in

the second degree. That this instruction was prejudicial to the defendant would seem to be apparent.

For the errors pointed out, we conclude that the defendant is entitled to a new trial, and it is so ordered.

New trial.