STATE OF NORTH CAROLINA v. ROBIN HALL

No. 828SC182

(Filed 7 December 1982)

1. **Assault and Battery § 15.2; Criminal Law § 111.1— assault with a deadly weapon with intent to kill—pre-trial remark to jury—equating charge with attempted murder—error**

   The trial judge committed prejudicial error by attempting to paraphrase a portion of defendant's indictment in pre-trial remarks to the jury by stating that defendant was charged with the "North Carolina equivalent of attempted murder." Defendant was charged with the statutory offense of assault with a deadly weapon with intent to kill, inflicting serious injury, G.S. 14-32(a), and the crimes of "attempted murder" and "assault with intent to kill" differ in an important manner in their respective mental state requirements. G.S. 15A-1213.

2. **Assault and Battery § 15.2; Criminal Law § 113.8— assault with a deadly weapon with intent to kill—error in summarizing evidence—prejudicial**

   In a prosecution for assault with a deadly weapon with intent to kill inflicting serious bodily injury not resulting in death, the trial judge committed

prejudicial error in his charge to the jury by summarizing the evidence as showing that defendant told the victim "that he was going home and get his gun and kill him" since there was no evidence that defendant had said "and kill him" at that point in time. Defendant made no effort to call the misstatement to the trial court's attention; however, a statement of a material fact not in evidence will constitute reversible error whether or not it is called to the court's attention.

Chief Judge MORRIS concurs in the result.

APPEAL by defendant from *Bruce, J.* Judgment entered 25 September 1981 in Superior Court, WAYNE County. Heard in the Court of Appeals 20 September 1982.

The defendant, Robin Hall, was charged in a bill of indictment with assault with a deadly weapon with intent to kill inflicting serious bodily injury not resulting in death. Defendant pled not guilty, asserting self-defense. From a verdict of guilty of assault with a deadly weapon inflicting serious injury and the imposition of an active sentence, defendant appealed.

The issues dispositive of this appeal are whether the trial court erred in its pre-trial remarks and during its charge to the jury by misstating the evidence.

*Attorney General Edmisten, by Assistant Attorney General Robert G. Webb, for the State.*

*Duke and Brown, by John E. Duke, for defendant appellant.*

JOHNSON, Judge.

The State's evidence tended to show that on 23 March 1981 at about 8:00 p.m., in a parking lot in Goldsboro, North Carolina, there was an argument between the defendant and Edward Thomas Locklear, Jr., over the defendant's treatment of Locklear's sister, Theresa Locklear. At this time, the defendant and Theresa Locklear were seated in defendant's car. Edward Locklear approached the vehicle and tried to engage defendant in a fist fight. The defendant left the scene in his car with Theresa. Edward Locklear testified that defendant, "said he was going to get his gun," called the Locklear home about 15 minutes later, and "threatened me and my daddy." Locklear did not speak with defendant on the phone himself. Locklear's father testified that "he (defendant) said I'm going to get that son of yourn [sic]. That's

all he said. I said if you got a gun, you better keep it hidden because a gun is going to get you in trouble." Within 30 minutes after the initial incident, the defendant drove Locklear's sister toward her father's house and parked about a block away, letting her off. As defendant was pulling away, Locklear yelled for him to stop, came running up, and while defendant was seated in the vehicle again attempted to engage defendant in a fight. Randy Locklear, a younger brother, was also present and Theresa Locklear, at this time, was standing behind her brother. Edward Locklear testified that defendant threw his arm out the car window and that defendant had a gun in his hand. Locklear again offered to fight the defendant. The defendant let the clutch off his car and started rolling away. Locklear testified that defendant shot him while the car was rolling away. After Locklear saw the car going down the road he fell to the ground. Locklear testified that he never threatened to kill and never touched the defendant during the two incidents.

Defendant's evidence tended to show that he had known the Locklear family for many years. Theresa Locklear had had a child by defendant, and Theresa had been living with defendant's mother on and off for a few years. There was some ill will between the members of the Locklear family and defendant.

Defendant testified that during the first incident Locklear threatened to kill him and broke defendant's windshield by beating on it. Defendant stated that he did not threaten to go home for his gun in order to get Locklear. In fact, the gun was in his car at that time. Defendant left the scene with Theresa and drove to his mother's house. His mother was on the telephone with Locklear's father, Edward Locklear, Sr., when they arrived. She handed defendant the phone. Defendant testified that Locklear's father threatened him, stating, "Well, if I go get my gun, I am going to use it" and defendant could hear Edward, Jr. in the background, threatening him. Defendant and Theresa then drove toward the Locklear home and parked about a block away.

Theresa got out of the car. Edward Locklear, Jr. came running up to the defendant's car as he let out the clutch. Defendant testified that Locklear reached into the car, grabbed him from behind and started choking him. Defendant then tried to get the gun off the dashboard. In the struggle the gun went off. Defend-

ant testified that he never aimed the gun at Locklear, that the bullet must have hit the street and then struck Locklear in the chest, but that defendant did not know that Locklear had been hit.

Theresa Locklear's testimony, for the most part, corroborated defendant's version of the two incidents. Theresa stated that after she heard the gunshot, the defendant pulled away. Her brother remained standing, talking to her, and he never screamed. No blood was visible even after Locklear fell to the ground.

[1] In pretrial remarks to the jury, the trial court stated, "It (sic) is a criminal proceeding wherein the defendant stands charged with the North Carolina equivalent of attempted murder, assault with a deadly weapon with intent to kill inflicting serious injury." Defendant contends that it was prejudicial error for the trial judge to advise the jury that the defendant, in effect, was charged with attempted murder.

G.S. 15A-1213 provides:

Prior to selection of jurors, the judge must identify the parties and their counsel and briefly inform the prospective jurors, as to each defendant, of the charge, the date of the alleged offense, the name of any victim alleged in the pleading, the defendant's plea to the charge, and any affirmative defense of which the defendant has given pretrial notice as required by Article 52, Motions Practice. The judge may not read the pleadings to the jury.

"The purpose of the statute, when read as a whole and considered together with the Official Commentary, apparently is to avoid giving jurors 'a distorted view of the case' through the 'stilted language of indictments.'" *State v. Laughinghouse*, 39 N.C. App. 655, 657, 251 S.E. 2d 667, 668, *appeal dismissed*, 297 N.C. 615, 257 S.E. 2d 438 (1979). The trial judge does not violate G.S. 15A-1213 by reading a portion of the indictment to the jury as a part of his charge after the close of the evidence. *Id.* However, reading the indictments at the very *beginning* of the trial is the very evil sought to be prevented, giving the jury a distorted view of the case through the stilted language of indictments, and constitutes prejudicial error. *State v. Hill*, 45 N.C. App. 136, 263 S.E. 2d 14 (1980).

State v. Hall

In the case *sub judice* the indictment contains the following language:

> That Robin Hall . . . did, unlawfully, willfully and feloniously assault Edward Thomas Locklear, Jr. with a certain deadly weapon, to wit: a small caliber handgun with the felonious *intent to kill and murder*. (Emphasis added.)

The statement that defendant was charged with the "North Carolina equivalent of attempted murder" came at the very beginning of defendant's trial. It was not repeated in the court's charge to the jury. The statement was an apparent attempt to paraphrase a portion of the indictment. While it cannot be said that the trial court gave the jury a distorted view of the case through the use of the "stilted" language of the indictment, a distorted view was given through the use of an inaccurate and misleading paraphrase.

Defendant was charged with the statutory offense of assault with a deadly weapon with intent to kill, inflicting serious injury. G.S. 14-32(a). The State contends that in this statute, "intent to kill" and "attempted murder" mean the same thing. We do not agree.

G.S. 14-32(a) is contained in G.S., Chap. 14, Art. 8, Assaults. By the passing of G.S. 14-32 the Legislature intended to create a new offense of higher degree than the common law crime of assault with intent to kill. *State v. Jones*, 258 N.C. 89, 128 S.E. 2d 1 (1962). The felony described in G.S. 14-32 is often referred to as felonious assault. *State v. Lewis*, 274 N.C. 438, 164 S.E. 2d 177 (1968). Hence, a proper shorthand expression of the offense involved in this case would be "felonious assault."

The crimes of "attempted murder" and "assault with intent to kill" differ in an important manner in their respective mental state requirements. The various degrees of homicide recognized in this State have been defined by our Supreme Court time and again.

> Murder in the first degree is the unlawful killing of a human being with malice and with premeditation and deliberation . . . . Murder in the second degree is the unlawful killing of a human being with malice but without premeditation and deliberation. (Citations omitted.)

*State v. Wilkerson,* 295 N.C. 559, 577, 247 S.E. 2d 905, 915 (1978), *quoting, State v. Wrenn,* 279 N.C. 676, 681-82, 185 S.E. 2d 129, 132 (1971) (Huskins, J.). In *State v. Hill,* 287 N.C. 207, 214 S.E. 2d 67 (1975) the Supreme Court compared the elements of G.S. 14-31, the crime of secret assault, with those of G.S. 14-32(a), the crime of felonious assault.

> The felony described in G.S. 14-32(a) is often referred to as felonious assault . . . The following elements therefore must be proven beyond a reasonable doubt in order to establish the crime of felonious assault: (1) assault; (2) deadly weapon; (3) intent to kill; and (4) infliction of serious injury . . . G.S. 14-31, *supra,* in addition to the above common elements, requires proof of *secret manner* and of *malice.* These elements must be proven in order to support a conviction under G.S. 14-31; but they need not be shown at all in a prosecution under G.S. 14-32(a). (Emphasis original.)

*Id.* at 217, 214 S.E. 2d at 74. The mental state required for felonious assault has been defined in the following manner:

> A specific intent to kill is an essential element of the offense of assault with intent to kill . . . Hence an intent to kill the victim by means of assault, as opposed to an intent merely to intimidate, must accompany the assault. (Citations omitted.)

*State v. Irwin,* 55 N.C. App. 305, 309, 285 S.E. 2d 345, 349 (1982). It is clear therefore, that while malice is not an element of felonious assault, it is an element of both first and second degree murder. The elements of an assault with intent to kill may be in an attempt to commit murder, but that alone does not render the two offenses equivalent.

The State argues that the trial court complied with the requirements of G.S. 15A-1213 because the bill of indictment charges the defendant with "intent to kill and murder." The implication being that the prospective jurors were, therefore, correctly informed of the charge against the defendant.

The purpose of G.S. 15A-1213, with its admonition against reading the pleadings to the jury, is to avoid giving jurors a distorted view of the case through the stilted language of the indictment. *State v. Laughinghouse, supra; State v. Hill, supra.* The

language of the indictment in this case characterizes the offense involved in a distorted manner. First, in common usage, "murder" is a value-laden term while "kill" carries no specific connotation of the same nature. Second, and more importantly, "murder" has a distinct legal meaning, and it is one which is *not* embodied in the statute defining the offense with which defendant is charged. The following statement is illustrative of this point:

> There is a well recognized distinction between an assault with intent to murder and an assault with intent to kill. Malice is a necessary element to constitute an assault with intent to murder but is absent in an assault with intent to kill or commit manslaughter, or, as it is said, the assault with intent to kill may be committed without malice. If malice is lacking and yet the assault is unlawful, the crime committed is of a lower degree than assault with intent to murder.

40 C.J.S., Homicide, § 73, p. 938.[1]

Defendant was charged with the statutory offense of assault with a deadly weapon with *intent to kill*, inflicting serious injury. *Malice* is not an element of this offense in North Carolina, *State v. Hill, supra,* while it is an element of the offense of murder, *State v. Wilkerson, supra,* and is commonly an element of the offense of assault with *intent to murder.* In view of the fact that the indictment itself gives a distorted view of the charge, the incorporation of a portion of it in the court's pretrial statement to the prospective jurors could only have the same effect. The bet-

---

1. It is true that our Supreme Court, in *State v. Gregory,* 223 N.C. 415, 421, 27 S.E. 2d 140, 143 (1943), stated that no distinction is commonly made between the expressions "intent to murder" and "intent to kill." However, the statement in *Gregory* is *dicta.* The issues before the Supreme Court in *Gregory* concerned alleged defects in the indictment and verdict returned upon the offense charged therein. As in the case under discussion, the indictment charged defendant Gregory with felonious assault with a deadly weapon, to wit, a pocket knife, inflicting serious injuries not resulting in death, "with intent to kill and murder." *Id.* at 416, 27 S.E. 2d at 141. The jury found the defendant guilty of an assault with intent to kill. The Supreme Court stated that "intent to kill" and "intent to murder" are designated "*in ipssissimis verbis*" in the course of its discussion whether assault with intent to kill is a lesser grade of assault with a deadly weapon with intent to kill inflicting serious injury and further, whether both offenses were expressly excepted from the punishment then assigned to simple assault. In view of the Supreme Court's later definitive statement in *State v. Hill, supra,* regarding the lack of an element of malice in assault with intent to kill, we do not find *Gregory* controlling on the issue presented by the facts of this case.

ter practice under G.S. 15A-1213 would be to simply read the statutory language of the offense charged with no additions. The trial court's statement that defendant was charged with the "equivalent of attempted murder" was prejudicial error.

[2] Defendant argues the trial judge also committed prejudicial error in his charge to the jury. In summarizing the evidence, the trial judge stated, "the State's evidence tends to show that Robin Hall told Edward Locklear that he was going home and get his gun and kill him." Defendant argues the portion "and kill him" is a misstatement of material fact as there is no evidence that defendant made such a statement.

The trial court inaccurately summarized this evidence of the defendant's intent. Edward Locklear testified that defendant "said he was going to get his gun" during the first incident. Locklear did not testify that defendant said "and kill him" at that point in time. Locklear did testify that during the second incident defendant said, "if I touched him he was going to kill me." While this was further evidence on the issue of defendant's intent, the court failed to summarize any statements made by defendant immediately preceding the shooting during the second incident. This manner of summarizing the evidence could only leave the misleading impression in the minds of the jurors that they should only consider statements made during the first incident as bearing on defendant's intent.

The State argues that errors in stating the evidence must be called to the trial court's attention before the case is submitted to the jury or else be deemed to have been waived. It is true that defendant made no effort to call the misstatement to the trial court's attention. However, a statement of a material fact not in evidence will constitute reversible error whether or not it is called to the court's attention. *State v. Barbour*, 295 N.C. 66, 243 S.E. 2d 380 (1978); *State v. McCoy*, 236 N.C. 121, 71 S.E. 2d 921 (1952).

In *State v. Barbour*, the trial court erred in summarizing the evidence in its charge by stating, "that he had a pistol in his hand" when the defendant had first arrived, where the State's only eyewitness nowhere testified that she saw a gun in defendant's hand when he first returned. 295 N.C. at 74-5, 243 S.E. 2d at 385. The court in *Barbour* found the instruction to be "highly

State v. Hall

misleading and prejudicial in that it strongly reinforces the State's position that defendant came to the room armed and prepared to get his money or kill the deceased, when there was no evidence that defendant had a gun in his hand until after the deceased had been shot once." *Id.* While it is true that a misstatement of a collateral matter must be called to the court's attention or be deemed waived, *State v. Hankerson*, 288 N.C. 632, 220 S.E. 2d 575 (1975), *rev'd on other grounds*, 432 U.S. 233, 53 L.Ed. 2d 306, 97 S.Ct. 2339 (1977), the defendant's intent to kill Locklear is an element of the offense to be proven beyond a reasonable doubt by the State. Both the defendant and Theresa Locklear testified that no mention of going to get a gun was made during the initial incident. Sergeant Lewis testified about his interview with Locklear after the shooting. Locklear told Sergeant Lewis only that "he had a verbal confrontation with Mr. Hall and at which time he was, he had intentions of fighting with Mr. Hall, but Mr. Hall rolled the windows up on the car and drove away." The defendant testified "at that time the gun was in the car. It was in the car I was driving. I did not have to go home to get the gun."

As in *State v. Barbour*, the court's inclusion of a material fact not in evidence is highly misleading and prejudicial in that it strongly reinforces the State's position that defendant returned to the vicinity of the Locklear home to kill Edward Locklear. This instruction, together with the previously noted erroneous pretrial remark to the jury regarding "attempted murder," constitute manifest prejudice to this defendant. As a consequence, he must be afforded a new trial.

As the events which form the basis of defendant's remaining assignments of error may not recur on retrial, we deem it unnecessary to discuss them.

New trial.

Chief Judge MORRIS concurs in the result.

Judge BECTON concurs.