STATE OF NORTH CAROLINA v. JEFFREY CLAY SMITH

No. 8322SC616

(Filed 7 February 1984)

1. **Criminal Law § 168.2— instructions—reference to statement as "confession"—harmless error**

   Any error in the court's instruction referring to defendant's statement as a "confession" was harmless beyond a reasonable doubt in light of the overwhelming evidence that defendant intentionally and without provocation shot the deceased.

2. **Criminal Law § 138.7— judge not influenced by personal feelings in sentencing**

   The trial court's comments to the effect that defendant was guilty of second degree murder did not show that the court was improperly influenced by "personal feelings" in imposing the presumptive sentence for voluntary manslaughter.

3. **Criminal Law § 138— presumptive sentence—findings as to aggravating and mitigating factors unnecessary**

   The trial court was not required to make any findings concerning aggravating and mitigating factors where he imposed the presumptive sentence. G.S. 15A-1340.4(b).

APPEAL by defendant from *Davis, Judge.* Judgment entered 7 January 1983 in Superior Court, DAVIDSON County. Heard in the Court of Appeals 12 January 1984.

Defendant was charged in a proper bill of indictment with second degree murder. At trial, the State offered evidence tending to show the following:

On 5 June 1982 an officer of the Davidson County Sheriff's Department discovered the body of Lawrence Rudolph Lanier in a heavily wooded area. The deceased had been shot twice in the head at close range. Officers investigating the death interviewed

the defendant on 6 June 1982 at which time the defendant signed a waiver of his constitutional rights and made a formal statement. This statement was admitted into evidence without objection and is as follows:

> Around 8:00 a m I got up from bed. I had spent the night at Rudolph Lanier's house. He wanted me to do some work on a white Cadillac in the basement. We went riding around and I told him I didn't want to work on the car. We got in a argument over that and argued for three or four hours. We were going to Salisbury but he didn't stop anywhere there. He then went back towards . . . the Lake. Prior to this Rudolph had hit me in the chin and said, "I'll blow your [expletive deleted] head off." When he turned off Hwy. 8 . . . I got worried. Then he turned right . . . onto a dirt road. . . . He started arguing again and I told him to let me out of that damn car. He was sitting in the driver's seat and when he started squirming and looked like he was trying to turn, I shot him twice with a .32 revolver. . . .

> I, then, slid him out of the truck and removed all identification from the body and his money in the billfold. . . .

> I was under the influence when the shooting happened. I had had a little to drink. But I knew he was going to kill me so I shot him.

Search of the deceased's residence revealed a stolen white Cadillac and parts taken from the car. Ballistics testing revealed that one of the pellets removed from the body at the autopsy was fired from the gun found in defendant's possession at the time of his arrest. Testing on the other pellet taken from the body was inconclusive.

Defendant offered no evidence. The jury returned a verdict of guilty of voluntary manslaughter, and the court sentenced the defendant to the presumptive term of six years. From this judgment, defendant appealed.

*Attorney General Rufus L. Edmisten, by Special Deputy Attorney General John R. B. Matthis and Assistant Attorney General John F. Maddrey, for the State.*

*Jerry B. Grimes and Kimberly T. Harbinson for the defendant, appellant.*

HEDRICK, Judge.

Defendant's Assignment of Error Nos. 1-5 relate to the exclusion of testimony. Our examination of the exceptions on which these assignments of error are based reveals several instances in which defendant failed to offer any proof of the evidence excluded. In these instances, of course, we are unable to determine whether exclusion of the evidence in question was error. In other instances we note defendant's exceptions are to rulings made prior to a voir dire, following which the evidence in question was admitted without objection. Despite such difficulties in identifying the precise judicial action now complained of, we have examined each exception upon which each assignment of error is based and find each to be without merit.

In Assignment of Error No. 6 the defendant challenges the exclusion of evidence "relative to the character for violence of the deceased, Rudolph Lanier." It is true that in this State "[e]vidence of the deceased's violent character . . . is admissible in a homicide case where self-defense is in issue and the State's evidence is wholly circumstantial or the nature of the transaction is in doubt in order to shed light on the question of which party was the first aggressor." *State v. Barbour*, 295 N.C. 66, 73, 243 S.E. 2d 380, 384 (1978). In the instant case, however, the evidence was uncontroverted as to which party was the aggressor, and this evidence was derived entirely from defendant's own statement. The rule set forth in *Barbour* has no application in such circumstances, and the assignment of error is thus overruled.

By Assignment of Error Nos. 7 and 15 defendant raises the question of the sufficiency of the evidence to support his conviction of voluntary manslaughter. He contends evidence offered by the State established as a matter of law that he acted in self-defense and that the victim was the aggressor. This argument, when considered in light of defendant's own statement about the killing, borders on the frivolous. The assignments of error are meritless.

In Assignment of Error Nos. 9-12 and 14 defendant assigns error to various aspects of the court's charge to the jury. We have carefully reviewed each exception upon which these assignments of error are based and feel that little would be gained by

discussing in detail the arguments presented. We conclude that the challenged instructions are free from prejudicial error.

[1] In Assignment of Error No. 13, defendant argues that the court erred in refusing to correct an instruction in which the court referred to defendant's statement as a "confession." While the instruction complained of is inartfully stated, we are unwilling to say that, considered in context of the entire charge, it is error. Assuming *arguendo* that the instruction is erroneous, we find that under these circumstances, where the evidence is overwhelming that the defendant intentionally and without provocation shot the deceased, any error was harmless beyond a reasonable doubt. "In addition to showing that an instruction was erroneously given, the defendant must show that the instructions as given materially prejudiced him." *State v. Tillman*, 36 N.C. App. 141, 143, 242 S.E. 2d 898, 899 (1978).

[2] Finally, defendant assigns error to the court's imposition of the presumptive six year term, contending first that the judge was impróperly influenced by "personal feelings" in imposing sentence. In this regard, he directs our attention to the following comments made by the trial judge at the sentencing hearing:

> At this particular time, that time has passed and the body is cold, and it is not as bad as it appeared at the time; but this man executed that man. I don't care how mean he was, he executed him. He shot him once in the jaw, and then he put that pistol to his head and pulled the trigger into his brain. If he had shot once, that would have been one thing; but an execution—that is exactly what it was. You know it—I know it —and these officers know it. We may not want to admit it.
>
> . . .
>
> You are dealing mighty close to murder one, for which they take your life; and the Jury was very kind to the Defendant in finding him guilty of voluntary manslaughter rather than second-degree; because, from all the evidence presented, he was certainly guilty of second-degree murder.

While the quoted statements could be characterized as inappropriate, we hardly think the judge can be said, under the cir-

cumstances, to have acted out of his "personal feelings" in imposing the presumptive sentence.

[3]   Defendant also assigns as error the court's failure, in sentencing defendant, to find three of the mitigating factors set out in N.C. Gen. Stat. Sec. 15A-1340.4(a)(2). We hold that, based on the clear language of N.C. Gen. Stat. Sec. 15A-1340.4(b), the judge was not required to "make any findings regarding aggravating and mitigating factors . . . [since] he impose[d] the presumptive term."

Defendant has brought forward and argued other assignments of error that are meritless beyond peradventure. We hold defendant had a fair trial, free from prejudicial error.

No error.

Judges BRASWELL and EAGLES concur.