## Ex parte Brown.

### (Circuit Court, W. D. Arkansas. October 14, 1889.)

1. HOMICIDE—ASSAULT WITH INTENT TO KILL.

   To make an assault with intent to kill, section 2142, Rev. St. U. S., does not require that the act would be murder if death had ensued. If it would be only manslaughter in case of death, it will be an assault with intent to kill if death does not ensue.

2. SAME—INTENT SHOWN BY USE OF WEAPON.

   If a party does an act with a dangerous or deadly weapon, which, from its nature and the way it is done, may naturally, probably, or reasonably produce death, or jeopardize life, the law says that those who try the facts may and it is their duty to attribute to such an act an intent to kill. In the light of such facts a party is not permitted to deny this intent to kill.

3. SAME—JURISDICTION—COURTS OF INDIAN TERRITORY.

   The United States court for the Indian Territory, created by the act of March 1, 1889, has no jurisdiction of an assault with intent to kill, but has of an aggravated assault.

4. SAME—INDICTMENT AND INFORMATION.

   An assault with intent to kill is an infamous offense. An aggravated assault is, in the law, only a misdemeanor, so named by the statute. An assault with intent to kill cannot be tried on an information.

5. SAME—JURISDICTION—SPLITTING OFFENSE.

   The United States court at Muskogee, Indian Territory, cannot carve out of an assault with intent to kill an aggravated assault, and try the latter, because it does not have jurisdiction of the greater crime.

6. SAME.

   A court that does not have jurisdiction of a major offense cannot carve out of such offense one of less grade, and try that, as the conviction of a person of such offense so carved out of a higher one does not protect such person against another trial for the higher offense.

(Syllabus by the Court.)

Petition for *Habeas Corpus.*

The petitioner states that, on the 15th day of June, 1889, an information was filed against him by the United States attorney for the Indian Territory, in the United States court for said territory, charging him with assault on one R. H. Bousted, who is alleged in said information to be a United States citizen, by shooting at the said Bousted; that, on the 11th day of September, 1889, he was tried upon said charge, and found guilty by the jury; that afterwards judgment was pronounced by the court upon said verdict, by which petitioner was sentenced to imprisonment in the jail at Muskogee for one year, and to pay a fine of $100; that afterwards he filed a motion for a new trial, and in arrest of judgment, alleging that said court had no jurisdiction of said case both of which were overruled; that the information by which petitioner was charged with the offense set out the offense known to the law as an "assault with intent to kill;" that said United States court for the Indian country had no jurisdiction to try the petitioner for such an offense. For this reason the petitioner is restrained of his liberty, contrary to the law and the constitution of the United States, and therefore entitled to his discharge from arrest.

*M. M. Edmiston, Thomas Marcum,* and *Wm. H. H. Clayton,* U. S. Dist. Atty., for petitioner.

*Z. T. Walrond,* U. S. Atty., for the Indian country.

PARKER, J., (*after stating the facts as above.*)   The question of the jurisdiction of this court to issue the writ of *habeas corpus* in such a case as the one set out in the petition was passed upon in the cases of *Ex parte Farley* and *Ex parte Wilson, ante,* 66, (before the court at this term.) Upon the principle there recognized the plea to the jurisdiction of this court to issue the writ of *habeas corpus* will be overruled.   The question raised in this case is whether the United States court for the Indian country had jurisdiction to try, convict, and sentence the petitioner to jail for one year, or any other time.

The charging part of the information upon which petitioner was convicted, a copy of which information is attached to the petition, sets out that petitioner, "on or about the first day of June, 1889, within the Indian country, at a place under the exclusive and sole jurisdiction of the United States, unlawfully did then and there assault the person of one R. H. Bousted, a citizen of the United States, * * * with force and arms, with a revolving pistol, a deadly weapon, commonly called a 'revolver,' loaded or charged with cartridges containing gunpowder and leaden balls, and of the caliber of No. 45, in the defendant's hands then and there held and discharged divers times at and against the said complainant, * * * with intent to do him, the complainant, * * * bodily injury, without provocation, and in an abandoned manner," etc.   The statement of Mr. Walrond, the United States district attorney, made in his argument before this court in this case, was that the proof offered by the government showed that petitioner presented his pistol in the direction of Bousted, and, while holding it in such direction, within shooting distance of Bousted, across the street from him, fired at Bousted.   These facts show a case as set out by the allegations of the information descriptive of the assault, but not such a case as the conclusion of the information would indicate, but an assault with intent to kill.   Was this case such a one that the court which tried the case had jurisdiction to try?   Section 2142 of the Revised Statutes is that "every white person who shall make an assault upon an Indian or other person, and every Indian who shall make an assault upon a white person within the Indian country, with a gun, rifle, sword, pistol, knife, or any other deadly weapon, with intent to kill or maim the person so assaulted, shall be punishable by imprisonment at hard labor for not more than five years nor less than one year."   The offense as presented by this section is made up of two things,— act and intent.   That the act may be shown to exist, it must be proven that the force and violence used was of the character, as used, to endanger life.   The overt act of violence must be such as to jeopardize life, or put the body in danger of receiving such great violence that death might ensue from such violence.   Whenever an act of this kind is done the law attaches a certain intent to such an act, and it does not permit a party to deny that he intended the consequences which usually, naturally, and reasonably follow from acts of like character.   Nor does the law permit a pleader, when he sets out acts which make, in the law, an assault with intent to kill, to attribute any other intent to the party who

did the act than the intent which the law attributes to such an act. ' As the law cannot look into a man's mind to find out his intent, it is forced to judge of his intention from his acts. Acting on this principle, the presumption of law is that a man is held to have intended the natural and ordinary consequences of his acts.

Chief Justice SHAW, in *Com.* v. *York,* 9 Metc. 103, said:

"A sane man, a voluntary agent acting upon motives, must be presumed to contemplate and intend the necessary, natural, and probable consequences of his own acts. If, therefore, one voluntarily or willfully does an act which has a direct tendency to destroy another's life, the natural and necessary conclusion from the act is that he intended so to destroy such person's life. So, if the direct tendency of the willful act is to do another some great bodily harm, and death in fact follows, as a natural and probable consequence of the act, it is presumed that he intended such consequence, and he must stand legally responsible for it. So, where a dangerous and deadly weapon is used with violence, upon the person of another, as this has a direct tendency to destroy life or do some great bodily harm to the person assailed, the intention to take life or do him some great bodily harm is a necessary conclusion from the act."

Mr. Justice FIELD, in *U. S.* v. *Outerbridge,* 5 Sawy. 620, said:

"The usual effect of a leaden ball fired from a loaded pistol of the common size at a distance of a few feet only, striking the head or back of a person, is to kill such person. The law, therefore, presumes that any one who fires a loaded pistol within a few feet of the object intends to kill. It therefore implies malice in him."

If the act as charged and proven to have been done by petitioner had resulted in striking and killing Bousted, the crime would have been murder. Then, as a matter of course, under the section of the statute above set out, it would be an assault with intent to kill, as that section, to make an assault with intent to kill, does not require it to be murder if death had ensued, for if in such case it would be manslaughter, the same act, if death did not ensue, would be an assault with intent to kill. Under the principles set out above as having been enunciated by eminent jurists, and in fact under every principle of the law relating to the method of finding intent, the act of petitioner, as charged by the information, and as stated by Mr. Walrond to have been proven, can be nothing else than an assault with intent to kill, as it is defined by section 2142, Rev. St. By the law as declared in *Ex parte Wilson,* 114 U. S. 426, 5 Sup. Ct. Rep. 935, and *Mackin* v. *U. S.,* 117 U. S. 352, 6 Sup. Ct. Rep. 777, the offense is an infamous offense, and, by article 5 of the amendments to the constitution, cannot be punishable except the party is charged by an indictment or information of a grand jury. The United States court for the Indian country has no jurisdiction of an assault with intent to kill. Section 25 of the act of congress of March 1, 1889, is "that, if any person in the Indian country assault another with a deadly weapon, instrument, or other thing, with an intent to inflict upon the person of another a bodily injury, where no considerable provocation appears, or where the circumstances of the assault show an abandoned and malignant disposition, he shall be adjudged guilty of a misdemeanor, and on conviction shall be fined in any sum not less than fifty nor ex-

ceeding one thousand dollars, and imprisoned not exceeding one year." The offense defined in this law is declared by it to be a misdemeanor. The one defined as an assault with intent to kill is an infamous offense, and a party can only be tried for it after an indictment found by a grand jury.

The petitioner was tried for an assault with intent to kill, upon an information. This cannot be done. But it is claimed that the court for the Indian country, although it does not have jurisdiction of an assault with intent to kill, may take an act that is an offense of this character and carve out of it the offense prescribed by section 25 of the act of March 1, 1889, and proceed to try, convict, and punish the party for an offense thus found to exist. Can this be done? What is the real crime that existed, and of which the showing made by the government makes the petitioner guilty? Assault with intent to kill. Then, in legal parlance, he is guilty of no other crime. There was no crime such as is prescribed in the twenty-fifth section of the act of March 1, 1889, which, as an offense, had an independent existence. The lesser crime in such a case is merged in the higher one. When the proof shows a felony, by the law based on public policy, the misdemeanor disappears. When a court does not have jurisdiction to try the infamous offense, the law, founded upon public policy, as well as upon good faith to the party tried, demands that the party shall not be tried for the misdemeanor by such court, as by this method of proceeding, if it were the law, a person might escape punishment for a high offense by going before a court that had the right to try misdemeanors alone and pleading guilty, and receiving an inadequate punishment. But, as this cannot be done, it is a great injustice to a party that he should be tried and convicted twice for the same act. The verdict of the jury and judgment of the court in this case is no protection to petitioner, for the reason that the offense of which he was tried was a misdemeanor, as it is the rule of the law that a trial and conviction, or acquittal, of a misdemeanor is no bar to another indictment for a felony. *People* v. *Saunders*, 4 Parker, Crim. R. 196; *Dinkey* v. *Com.*, 17 Pa. St. 126. To make a trial and conviction or acquittal of a person for an offense a bar to another trial for the same act, the accusation, whether made by indictment or information, must be such as that the person might have been found guilty and sentenced on it for the act of which he is accused a second time, and for which he is put on trial a second time. If, in the trial in this case, the petitioner could not have been found guilty of an assault with intent to kill, because the court had no jurisdiction to try such an offense, then he cannot set up his trial and conviction before that court as a bar to a trial and conviction before the court having jurisdiction to try him for such act upon a charge of assault with intent to kill. *Dinkey* v. *Com.*, *supra; State* v. *Hattabough*, 66 Ind. 223.

"If a man has been once fairly tried, there ought to be an end of the accusation forever. The right not to be put in jeopardy a second time for the same cause is as sacred as the right of trial by jury, and is guarded with as much care by the common law and the constitution."

A trial of a party before a court having no jurisdiction, or a judgment that is illegal, may harass and annoy a person as much as though it was legal. Therefore it is that he must be tried for an act by a court having jurisdiction, and in a legal way, that he may be protected.

Mr. Wharton, in his Criminal Law, (volume 1, § 563,) says:

"The true test is, could there have been a conviction of the major offense at the time of the conviction or acquittal of the minor? If so, then such conviction or acquittal of the minor is a bar. The reason is that, by convicting or acquitting of the minor on a count in which the major is contained, the defendant is virtually acquitted of the major."

In this case the offense of which petitioner was convicted is the minor one, and that of assault with intent to kill is the major one. The court at Muskogee had no jurisdiction of the major offense. Therefore, the petitioner, by his conviction and sentence there, is not protected against another trial upon the same facts for an assault with intent to kill, by a court having jurisdiction of such offense. When such a state of case exists, a court cannot carve out of the higher offense, of which it has no jurisdiction, one of less grade, and try the party for it, as this is unjust to the public, and it may be unjust to a party charged, and therefore it is against the policy and humanity of the law. To authorize it to do so, it must have jurisdiction of both offenses, and at the trial where the party is found guilty of the one of less grade the charge must be so made as upon that indictment the party might be found guilty of the major offense. The misdemeanor in this case is clearly merged in the felony, and the courts must always try for the crime committed. In *Wright* v. *State,* 5 Ind. 527, the court said:

"Assault and battery, which is simply a misdemeanor, is not included in any of the degrees of homicide. The misdemeanor is merged in the felony. The merger of the misdemeanor in the felony is as complete in the case of an assault and battery with intent to commit murder as where the murder is committed."

In 2 Russell on Crimes (9th Ed. p. 1026) occurs this paragraph:

"Thus, where the defendant was indicted for a misdemeanor, in burning a house in his own occupation, such house being alleged to be contiguous and adjoining to certain dwelling-houses of divers liege subjects, etc., and the facts of the case, as stated by the counsel for the prosecution, appeared to be that the defendant set fire to his own house in order to defraud an insurance office, and that in consequence several houses of other persons adjoining to his own were burnt down. BULLER, J., said that, if other persons' houses were in fact burnt, although the defendant might only have set fire to his own, yet, under these circumstances, the prisoner was guilty, if at all, of felony, (the misdemeanor being merged,) and could not be convicted on this indictment; and therefore he directed an acquittal."

If the court at Muskogee can carve a lesser offense out of a higher one, of which it has no jurisdiction, justice might be defeated; because out of every assault with intent to kill there might be carved an aggravated assault, and in this way out of an infamous offense—a felony—a misdemeanor may be made, and, it might be, inadequate punishment administered. As I have said, this policy would be against public justice. If the court at Muskogee had jurisdiction of an assault with intent to kill,

and the petitioner had been indicted for that offense and convicted of an aggravated assault, he could not complain, as such a proceeding would protect him against any further trial; but, as the court at Muskogee has no jurisdiction of assaults with intent to kill, it cannot put a person on trial for that offense; nor can it ignore the higher offense for the purpose of taking jurisdiction of the lesser one.

Congress intended that the Muskogee court should try parties only for the lesser offense. In this case the information shows that the offense is one of which the Muskogee court has no jurisdiction. The allegations of the information in this case determine the jurisdiction. I am clear that, upon the statement in the information, and the facts as stated by Mr. Walrond, the offense is that of an assault with intent to kill.

It is said that perhaps the petitioner shot at the legs of Bousted, and that hence it was only an aggravated assault. Might not death ensue from such an assault? And, if so, is it not an assault with intent to kill? It is so because the intent and purpose of the prisoner was to inflict such a wound as that death might follow from it, and, when he did a wicked and wanton act like this, neither he nor the prosecuting attorney has any right to carve out for him a lesser crime because, perchance, the assailed might not have died. It is enough to know that death might have followed. Is not the main artery of a man's leg almost as vital as the heart itself? It was not claimed for the prisoner that he only intended a flesh wound, or that he aimed at any particular part of the legs. If he shot at Bousted's legs in a reckless manner, is he then entitled to such an interpretation of his wicked conduct as that he only intended to wound Bousted so as to cause great suffering or little suffering, but not to such an extent as to endanger life? How are we to distinguish in such a case between what might have been great bodily harm and a slight injury? If he actually shot at Bousted with a 45 caliber pistol, without cause or excuse, then is he not held to have intended such results as might probably have ensued from the act? There can be no difference between an intent, coupled with an act, to inflict such a wound as would probably result in long suffering and final death, and an intention to shoot a man through the heart, coupled with the act of firing. In such a case, if carving out a less offense is to be done, what line are we to carve to? Where shall we begin, and where shall we end? Upon what principles, or by what authority, can it be said that because a man shoots at another man's legs he only intended to inflict a slight wound? The intent was clearly to wound. Could a man know beforehand what sort of a wound he was going to inflict? The prisoner is presumed to know the nature of the weapon used, as well as the dangerous consequences of the use.

I am satisfied that the court at Muskogee had no jurisdiction to try the petitioner of the offense that he is really guilty of, and he is therefore entitled to a discharge from arrest. I desire to say, in regard to all these cases which have been before me on *habeas corpus*, that I think the government has made a mistake. By this mistake these petitioners have been wrongfully deprived of their liberty; they have been harassed by a

trial; they have been put to the expense of employing counsel; they have been cast into prison; and, while their trials and convictions before the court at Muskogee cannot be pleaded in bar by them, I think, when the grade of offenses are no higher than these they have committed, the humanities of the law would be subserved by discharging all of them from arrest, and that the government, because of its mistakes, proceed no further. The writ is ordered to issue in this case.