Darryl L. LOGAN, Appellant,

v.

UNITED STATES, Appellee.

No. 83-175.

District of Columbia Court of Appeals.

Argued May 17, 1984.

Decided Oct. 30, 1984.

Jennifer P. Lyman, Public Defender Service, Washington, D.C., with whom Judith Mroczka and James Klein, Public Defender Service, Washington, D.C., were on brief, for appellant.

Terence J. Keeney, Asst. U.S. Atty., Washington, D.C., with whom Joseph DiGenova, U.S. Atty., and Michael W. Farrell, Judith Hetherton, and Christopher A. Myers, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before NEBEKER, FERREN and ROGERS, Associate Judges.

FERREN, Associate Judge:

This appeal presents a question of statutory interpretation. D.C.Code § 16–2301(3)(A) (1981) provides, in part, that juveniles "sixteen years of age or older" who are charged with "assault with intent to commit ... murder" may—in the discretion of the United States Attorney—be prosecuted in the Criminal Division of Superior Court as adult criminal defendants. We are asked to determine whether this provision authorizes such adult prosecution of juveniles charged with "assault with intent to kill," in violation of D.C.Code § 22–501 (1981).

The government and appellant propose alternative interpretations of § 16–2301(3)(A). The government contends that Congress viewed "assault with intent to commit murder" and "assault with intent to kill" as "synonymous terms," and thus intended § 16–2301(3)(A) to refer directly to § 22–501. Appellant counters by pointing out that the state of mind necessary for an "intent to commit murder" is different from that required for an "intent to kill." Appellant urges this court to construe § 16–2301(3)(A) strictly, according to its plain language, so as to authorize such adult criminal prosecution only when a juvenile is explicitly charged with the offense of "assault with intent to commit murder" —a charge that only can be brought under D.C.Code § 22–503 (1981) (providing maximum five-year sentence for assault with intent to commit any offense other than those specified in §§ 22–501, –502).

■■■ While each party maintains that its interpretation of § 16–2301(3)(A) most closely approximates the meaning intended by Congress, each also concedes that its reading of the statute will lead to anomalous results in certain cases. After reviewing the parties' alternative interpretations, as well as the legislative history of § 16–2301(3)(A), we conclude that there is no way—short of engaging in a wholesale redrafting of the District's statutes on criminal assaults—to avoid the possibility of anomalous results or to implement fully the congressional intent underlying § 16–2301(3)(A). Accordingly, in light of this court's previous holding that "§ 16–2301(3) should be strictly construed against the prosecution and in favor of the person being proceeded against," *United States v. Tucker*, 407 A.2d 1067, 1070 (D.C.1979), and in line with the well-established rule that " 'ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity,' " *Busic v. United States*, 446 U.S. 398, 406, 100 S.Ct. 1747, 1753, 64 L.Ed.2d 381 (1980) (quoting *Rewis v. United States*, 401 U.S. 808, 812, 91 S.Ct. 1056, 1059, 28 L.Ed.2d 493 (1971)), we are compelled to adopt appellant's position. We remand this case for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On February 26, 1982, the Criminal Division of the Superior Court issued a complaint charging appellant with assault with intent to kill while armed, in connection with a shooting at Armstrong Vocational School.[1] At the same time, a warrant is-

---

1. The specific wording of the complaint alleged that appellant had committed an assault "with intent to kill *and* murder ... in violation of Title 22 Section 501 & 3202" of the D.C.Code.

Because the government has proceeded against appellant under § 22–501, and that section requires only an "intent to kill," the addition of the words "and murder" in the complaint were

sued for appellant's arrest. These two documents accurately reflected the fact that appellant was seventeen years old on the date of the shooting.

■ The general rule in this jurisdiction is that a person accused of committing a delinquent act before his or her eighteenth birthday—which act would be criminal if committed by an adult—is accorded non-criminal treatment in the Family Division of the Superior Court. *See In re C.W.M.*, 407 A.2d 617, 621 (D.C.1979); *Black v. United States*, 122 U.S.App.D.C. 393, 394, 355 F.2d 104, 105 (1965). The belief underlying this separate juvenile justice system is that youthful offenders will benefit more from "measures of guidance and rehabilitation" than from a system that "fix[es] criminal responsibility, guilt and punishment." *Kent v. United States*, 383 U.S. 541, 554, 86 S.Ct. 1045, 1054, 16 L.Ed.2d 84 (1966). The statute governing proceedings in the Family Division, however, does create two exceptions to this general rule.

First, with respect to certain juvenile offenders at least fifteen years old, the Corporation Counsel may file a motion with the Family Division requesting transfer of the juvenile for criminal prosecution. D.C. Code § 16–2307(a) (1981).[2] A hearing must be held on such a motion, and the Family Division must determine whether "there are reasonable prospects for rehabilitating the child before his majority." D.C.Code § 16–2307(d)–(e) (1981). Unless the Division makes a finding that there is a reasonable prospect for rehabilitation, a transfer to the Criminal Division should be approved. *Id.* This type of transfer has long

been permitted under District law. *See* D.C.Code (1929 & Supp. IV 1938).

In 1970, Congress created a second exception to the general rule favoring non-criminal treatment of persons under eighteen years of age by amending the definition of "child" in D.C.Code § 16–2301(3). The new definition provides that a person "sixteen years of age or older" will not be considered a "child," subject to Family Division jurisdiction, if that person has been:

(A) charged by the United States attorney with (i) *murder*, forcible rape, burglary in the first degree, robbery while armed, *or assault with intent to commit any such offense*, or (ii) an offense listed in clause (i) and any other offense properly joinable with such an offense;

D.C.Code § 16–2301(3)(A) (1981) (emphasis added).[3] Sixteen- and seventeen-year-old persons charged with one of the offenses specified in this section may be indicted, tried, and sentenced as adults in the Criminal Division without prior judicial approval or determination of their individual prospects for rehabilitation. The decision whether to bring criminal charges and to prosecute such persons as adults is left to the discretion of the United States Attorney. *See United States v. Bland*, 153 U.S. App.D.C. 254, 261, 472 F.2d 1329, 1336 (1972), *cert. denied*, 412 U.S. 909, 93 S.Ct. 2294, 36 L.Ed.2d 975 (1973). In sum, the definition of "child" allows for the prosecution of sixteen- and seventeen-year-old youths in the Criminal Division, without leave of the Family Division, upon the filing of certain types of criminal charges, *In re C.S.*, 384 A.2d 407, 411 n. 7 (D.C.1977).

superfluous and cannot affect our analysis. *See* Super.Ct.Crim.R. 3 ("The complaint is a written statement of the essential facts constituting the offense charged.").

2. A transfer to the Criminal Division may be sought under the following circumstances:
    (1) the child was fifteen or more years of age at the time of the conduct charged, and is alleged to have committed an act which would constitute a felony if committed by an adult;

(2) the child is sixteen or more years of age and is already under commitment to an agency or institution as a delinquent child; or
    (3) a minor eighteen years of age or older is alleged to have committed a delinquent act prior to having become eighteen years of age.

3. Section 16–2301(3) also removes from Family Division jurisdiction any sixteen- and seventeen-year-old person charged with a traffic offense, as well as any such person who is charged with one of the offenses listed in the text but is convicted of a lesser included offense.

After appellant's arrest on charges of assault with intent to kill, the United States Attorney's Office decided to try him as an adult in the Criminal Division. Believing that the charge is within the scope of the offenses listed in § 16–2301(3)(A), the prosecutor did not file a motion with the Family Division for a transfer. Instead, he proceeded, without prior judicial approval, to obtain an indictment charging appellant with assault with intent to kill while armed, D.C.Code §§ 22–501, –3202 (1981), and carrying a pistol without a license, D.C. Code § 22–3204 (1981).

Appellant's trial counsel negotiated a plea agreement with the government. Appellant agreed to plead guilty to assault with a dangerous weapon, a lesser included offense of assault with intent to kill. In return, the government agreed to dismiss the other charges.

At the guilty plea hearing in the Criminal Division, however, appellant's counsel raised the issue of whether § 16–2301(3)(A) authorized appellant's prosecution as an adult:

> I should call to the [c]ourt's attention before we proceed with this plea ... I think there might be a problem with the [c]ourt's subject matter jurisdiction in this case .... I haven't completely researched the question, [but] it is not altogether clear to me that he [appellant] can be charged as an adult [f]or assault with intent to kill while armed ... under the relevant jurisdictional statute.

Appellant nonetheless indicated a willingness to go forward with his guilty plea and to raise his jurisdictional challenge at a later date. The Assistant United States Attorney, after making clear that he believed the court did have jurisdiction, requested that "the [c]ourt go ahead with the plea, and if counsel has any legal authorities on that matter, he can present them at a later date." The court then accepted appellant's guilty plea and scheduled a sentencing hearing.

Before sentencing, appellant filed a written motion challenging the Criminal Division's jurisdiction on the ground that appellant had not been properly transferred from the Family Division. The trial court rejected appellant's strict construction of § 16–2301(3)(A) and denied the motion. It reasoned that the use of the word "murder" in § 16–2301(3)(A), instead of the word "kill" used in § 22–501, "appears to me to be just a question of pure semantics." The court nonetheless agreed to postpone sentencing and entry of judgment until after appellant had an opportunity to pursue an interlocutory appeal. *See Choco v. United States*, 383 A.2d 333, 334–35 (D.C.1978) (permitting interlocutory appeal of a trial court order denying appellant's motion for a transfer to the Family Division).

## II. THE WAIVER ISSUE

■ As a preliminary matter, we must address the government's contention that appellant waived his right to challenge the trial court's ruling on § 16–2301(3)(A) because he failed to obtain the ruling and file an appeal before entering his guilty plea. The government bases its argument on D.C.Code § 16–2302 (1981), which governs the transfer of improperly filed cases from the Criminal Division to the Family Division.

Section 16–2302 sets forth rules governing three situations:

> [1] If the trial court becomes aware, "before the time when jeopardy would attach in the case of an adult," that the defendant before it was a child at the time of the alleged offense, it "shall forthwith transfer the charge ... to the [Family] Division," *id.,* § 16–2302(a);

> [2] If the fact that the defendant is a child "is not discovered by the court until after jeopardy has attached," but judgment has not yet been entered, the court "shall proceed to verdict" and then—if the defendant is found guilty—determine whether the defendant could have been subject to a pretrial transfer under § 16–2307. If the court finds that a pretrial transfer would have been appropriate, a criminal judgment should be en-

tered; if not, the case should be transferred to the Family Division for non-criminal disposition, *id.*, § 16–2302(b); and

[3] If judgment already has been entered, "it shall not be set aside on the ground of defendant's age" unless the court determines that "neither the defendant nor his counsel, prior to the entry of judgment, had reason to believe that defendant was under the age of eighteen years," and that "the defendant would not have been transferred [under the provisions of § 16–2307] for criminal prosecution if his age had been known." *Id.*

Neither the plain language nor the purpose of § 16–2302 appears to bar appellant's challenge to the trial court ruling. The only provision in § 16–2302 which purports to limit this court's authority to review a trial court ruling is that dealing with the third type of case listed above: "If judgment has been entered, it shall not be

set aside on the ground of defendant's age" unless the trial court makes certain findings which indicate that it would be unfair to deem the defendant to have waived the right to treatment as a juvenile.[4] Thus, this court ordinarily may not set aside a trial court judgment on the ground that the defendant was a child at the time of the offense.[5] The record in this case, however, shows that judgment has not yet been entered and thus that this case falls in the second § 16–2302 category: jeopardy has attached, but judgment has not been entered. The above-quoted provision of § 16–2302 is accordingly not applicable.

Moreover, the principal purpose of § 16–2302 is to prevent juvenile defendants from using "conscious deceit" as a means of obtaining two chances for a favorable judgment. 116 CONG.REC. 24346 (1970) (Statement of Senate Managers Regarding Con-

---

**4.** We also note that this statutory provision does not appear to be designed to address the situation presented in this case: a claim that the defendant was a child at the time of the conduct in question because the offense charged does not fall within the list of charges set forth in § 16–2301(3)(A). Instead, this provision appears to govern the more common problem that arises when a defendant is discovered to be under-age at some point after the United States Attorney's Office has filed charges and the Criminal Division has asserted jurisdiction. This reading of the statute is supported by the plain wording of the provision which at several points refers to the defendant's age as the focal point of the problem addressed, as well as by the legislative history, which consistently refers to § 16–2302 as a "provision for setting aside criminal judgment or sentence on the ground of genuine mistake of age." 116 CONG. REC. 24346 (1970) (Statement of Senate Managers Regarding Conference Bill); *see* H.R.REP. No. 1303, 91st Cong., 2d Sess. 226–27 (1970) (Conference Report) (§ 16–2302 provides "that a court may set a judgment aside on the ground of defendant's age").

**5.** Even in a case where no one discovers that the criminal defendant is a child until after judgment is entered, the statute directs the trial court to set the judgment aside if it finds that (1) neither the defendant nor defense counsel had prior knowledge of the problem, and (2) prosecution as an adult would not have been appro-

priate if the problem had been discovered pretrial. Nothing in § 16–2302 suggests that this court lacks authority to review a trial court's findings on these two statutory factors. Rather, § 16–2302 simply precludes this court from reversing a "child's" criminal conviction when the trial court's findings concerning these factors are not erroneous.

The government relies heavily on language from this court's opinion in *Choco* for the proposition that a juvenile defendant's right to be transferred to the Family Division is "forever lost" if it is not raised and resolved before jeopardy attaches. 383 A.2d at 334. This language, however, must be read in context. *Choco* concerned a defendant who sought an interlocutory appeal from a pretrial ruling that she was over the age of eighteen and thus subject to adult criminal prosecution. This court read the provision of § 16–2302 governing the third situation listed in the text (in which judgment already has been entered) to preclude any "post-judgment remedy in this court where, as here, both defendant and counsel had reason to believe, prior to judgment, that she was under the age of eighteen." *Id.* Because of this lack of a "post-judgment remedy," the court held that an interlocutory appeal was appropriate. *Choco* should not, however, be given such an expansive reading as to cut off all rights to appeal questions regarding prosecution of juveniles once jeopardy has attached. The plain language of the statute relied upon in *Choco* does not support such a reading.

ference Bill). A juvenile defendant should not be permitted to mislead an adult court—either by affirmative action or by knowing silence—into proceeding to the point where there is a double jeopardy interest in going forward to a verdict, and then be permitted to upset any resulting adverse verdict at will.

Appellant, by contrast, informed the trial court of his concerns before jeopardy attached. There was no attempt at deceit. At that point, therefore, § 16–2302 instructed the trial court to "forthwith transfer the charge" to the Family Division if it indeed found appellant was a child. The trial court nonetheless decided to go forward and accept appellant's guilty plea without ruling on the jurisdictional issue, after receiving assurances from the prosecutor, as well as defense counsel, that any challenge based on appellant's status as a "child" could be raised at a later date. Under these circumstances, any attempt to foreclose appellant's right to appeal the trial court's ruling would be contrary both to the policies underlying § 16–2302 and to fundamental notions of fairness.

### III. THE MERITS

Having disposed of this preliminary issue, we are confronted with a straightforward question of law: Does § 16–2301(3)(A)'s authorization of the prosecu-

tion of sixteen- and seventeen-year-olds charged with assault with intent to "murder" permit the government to institute adult criminal proceedings against a juvenile charged with assault with intent to "kill" under § 22–501? We address this question as one of first impression.[6]

### A. The Government's Interpretation of § 16–2301(3)(A)

The government argues in its brief that "assault with intent to 'kill,' D.C.Code § 22–501, was clearly the offense contemplated by Congress as one with which young persons between sixteen and eighteen years of age could be prosecuted by the United States Attorney in the Criminal Division." Like the trial court, the government bases its reading of § 16–2301(3)(A) on a belief that the distinction between the words murder and kill in the two statutes is simply a matter of semantics that should not be permitted to cloud congressional intent. In support of its position, the government points out that there is no statutory provision in the District explicitly outlawing assault with intent to commit murder, to which § 16–2301(3)(A) could have been referring. It further argues that, because assault with intent to kill is a specific intent crime,[7] "the state of mind required to prove assault with intent to kill also proves malice," the only element which arguably dis-

---

**6.** The government points out that dicta from this court's opinion in *Pendergrast v. United States*, 332 A.2d 919 (D.C.1975), suggest that § 16–2301(3)(A) does apply to a charge of assault with intent to kill. *Pendergrast* involved a defendant who was convicted of second degree murder for beating a man to death with a baseball bat. During the three-month period between the date of the crime and the date of the victim's death, "Pendergrast was petitioned as a juvenile in the Family Division on a charge of assault with intent to kill." *Id.* at 922. After the victim's death, the Family Division dismissed the juvenile petition and "the United States Attorney charged appellant as an adult with second degree murder pursuant to the election provision of ... § 16–2301(3)(A)." *Id.*

In the course of approving the prosecution of the second degree murder charge, the court stated: "[s]ince the [initial] charge was assault with intent to kill, and since appellant was 17 years old, the United States Attorney could have

prosecuted him as an adult." *Id.* (citing § 16–2301(3)(A)). Thus, the court opined in dicta that had the United States Attorney filed criminal charges under § 22–501 (which he did not), and had the Criminal Division asserted jurisdiction over such charges (which it did not), such actions would have been appropriate under § 16–2301(3)(A). Because the interaction of §§ 16–2301(3)(A) and 22–501 had no bearing on the issues presented in *Pendergrast* and was neither addressed by the parties nor focused on by the court, that case cannot be read to control the question now before us.

**7.** See *Fletcher v. United States*, 335 A.2d 248, 250–51 (D.C.1975); *United States v. Martin*, 154 U.S.App.D.C. 359, 362, 475 F.2d 943, 946 (1973); *United States v. Bridges*, 139 U.S.App.D.C. 259, 261, 432 F.2d 692, 694 (1970) (per curiam); Criminal Jury Instructions for the District of Columbia, No. 4.14 (3d ed. 1978).

tinguishes an intent to kill from an intent to commit murder.

■ To understand the shortcomings of the government's interpretation of § 16–2301(3)(A), it is first necessary to recognize that the element of malice, the state of mind required for an act of murder,[8] cannot be equated with specific intent to kill: "[i]ntent may be, and often is, an ingredient of malice, but never its exact counterpart." *Carter v. United States*, 141 U.S. App.D.C. 259, 263, 437 F.2d 692, 696 (1970) (per curiam), *cert. denied*, 402 U.S. 912, 91 S.Ct. 1393, 28 L.Ed.2d 655 (1971); *see, e.g.*, *United States v. Wharton*, 139 U.S.App. D.C. 293, 297, 433 F.2d 451, 455 (1970); *Green v. United States*, 132 U.S.App.D.C. 98, 100, 405 F.2d 1368, 1370 (1968), *cert. denied*, 400 U.S. 997, 91 S.Ct. 473, 27 L.Ed.2d 447 (1971).

■ A specific intent to kill exists when a person acts with the purpose or conscious intention of causing the death of another. *See, e.g.*, *United States v. Bradford*, 344 A.2d 208, 214–15 (D.C.1975); W. LA FAVE & A. SCOTT, CRIMINAL LAW 201–02 (1972); Criminal Jury Instructions for the District of Columbia, No. 4.14. This should be distinguished from the concept of general intent to kill, which involves an intention to commit an act of sufficient force to endanger the life of another, but not necessarily with any intent to bring about death as a result. *See, e.g.*, *Bradford*, 344 A.2d at 214. Malice, on the other hand, need not entail a specific intent to cause death. Nor does it necessarily exist in every case in which a person acts with a specific intent to kill.

At common law, malice was defined simply as "an evil design, purposiveness or willfulness." *Id.* at 215. Today, the concept of malice is generally articulated as "a wanton disregard for human life," *id.* at

214, " 'a state of mind showing a heart that is without regard for the life and safety of others'." *Bowler v. United States*, 480 A.2d 678, 687 (D.C.1984) (quoting *United States v. Hinkle*, 159 U.S.App.D.C. ·334, 336, 487 F.2d 1205, 1207 (1973)).

Malice may be found "where conduct is reckless and wanton, and a gross deviation from a reasonable standard of care, of such a nature that a jury is warranted in inferring that defendant was aware of a serious risk of death or serious bodily harm." *United States v. Cox*, 166 U.S.App.D.C. 57, 59, 509 F.2d 390, 392 (1974) (footnote omitted). Under this formulation, malice may be found "[e]ven where there is no intent to kill." *Carter*, 141 U.S.App.D.C. at 263 n. 18, 437 F.2d at 696 n. 18.

■ Malice may also exist when "the defendant actually intended or foresaw that death or serious bodily harm would result from his act." *Wharton*, 139 U.S. App.D.C. at 298, 433 F.2d at 456; *Belton v. United States*, 127 U.S.App.D.C. 201, 205, 382 F.2d 150, 154 (1967). This standard will be met in most cases if the jury finds that the defendant acted with a specific intent to kill. W. LA FAVE & A. SCOTT, *supra*, at 572. In certain circumstances, however, where the defendant acted with "adequate provocation, justification or excuse," malice may be mitigated even though the defendant acted for the purpose, and with the specific intent, of causing death. Criminal Jury Instructions for the District of Columbia, Nos. 4.21, 4.23; *see, e.g.*, *Bradford*, 344 A.2d at 215. This type of situation will arise "where the killer has been provoked or is acting in the heat of passion." *Id.* It also may occur when excessive force is used in self-defense or in defense of another and "[a] killing [is] committed in the mistaken belief that one may be in mortal danger." *Id.; see Wharton*, 139 U.S.App.D.C. at 301, 433 F.2d at

---

**8.** Although the law in this jurisdiction distinguishes between first degree and second degree murder, both of these offenses require proof of malice. *See* D.C.Code §§ 22–2401, –2403 (1981). Both at common law and in modern systems of criminal law, malice is the critical element

which distinguishes murder from lesser forms of homicide. *See United States v. Wharton*, 139 U.S.App.D.C. 293, 296, 433 F.2d 451, 454 (1970) (malice is "the sole element differentiating murder from manslaughter"). F. WHARTON, CRIMINAL LAW § 199 (14th ed. 1979).

459; R. Perkins, Criminal Law 69–70 (2d ed. 1969). In each of these situations—where the "purpose to kill is ... dampened" so as to "mitigate malice," *Bradford,* 344 A.2d at 215—a defendant is guilty of voluntary manslaughter, not murder. *Id.*[9]

Accordingly, because malice does not always accompany specific intent to kill, a person may be convicted of assault with intent to kill under § 22–501, even though the state of mind at the time of the crime was not sufficient to constitute murder.[10] Put another way, a person who commits an assault with a specific intent to kill—but who acts with adequate provocation, justification, or excuse—may be charged and convicted under § 22–501 despite the fact that, had the victim of the assault died, a charge of manslaughter, not murder, would have been appropriate.[11]

**9.** In the District of Columbia, manslaughter is a general intent crime. *See* D.C.Code § 22–2405 (1981); *Bradford,* 344 A.2d at 214. Thus, a specific intent to kill is not a prerequisite to a voluntary manslaughter conviction. *Id.* Nevertheless, voluntary manslaughter frequently involves a killing accomplished with specific intent, accompanied by adequate provocation, justification or excuse. *See* W. La Fave & A. Scott, *supra,* at 572–73.

**10.** Although some states have chosen to read their "assault with intent to kill" statutes to require proof of malice, *see, e.g., State v. Stout,* 49 Ohio St. 270, 30 N.E. 437 (1892), the courts of this jurisdiction historically have refused to adopt such a reading of the assault statutes enacted by Congress for the District.

The crime of assault with intent to kill did not exist at common law, either in the District of Columbia, *Davis v. United States,* 16 App.D.C. 442, 457 (1900) (Shepard, J., dissenting), or in Maryland, from which we derive our earliest common law principles. *Marks v. State,* 230 Md. 108, 111–12, 185 A.2d 909, 911 (1962), *cert. denied,* 373 U.S. 918, 83 S.Ct. 1308, 10 L.Ed.2d 417 (1963); *see* D.C.Code § 49–301 (1981); *Perkins v. United States,* 446 A.2d 19, 23 (D.C.1982) (per curiam). The common law did proscribe the offense of assault with intent to commit murder, but that crime required proof of malice, i.e., a showing that, had death resulted, a conviction for murder would have been appropriate. *See United States v. Cropley,* 4 D.C. (4 Cranch) 517–18, Fed.Cas. No. 14892 (1835) (dismissing assault with intent to commit murder charge because the evidence was that if death had ensued it would have been manslaughter only); *Marks,* 230 Md. at 111–12, 185 A.2d at 911.

The Penitentiary Act of 1831 first made "assault and battery with intent to kill" a crime in the District. 4 Stat. 448 (1831). The Supreme Court of the District of Columbia distinguished this statutory offense from the common law crime of assault with intent to commit murder by reading the Penitentiary Act not to "require evidence of malice prepense, nor of any other matter, to show that the offense would have

amounted to murder if death had ensued." *United States v. Herbert,* 5 D.C. (5 Cranch) 87, 92, Fed.Cas. No. 15354 (1836); *United States v. Tharp,* 5 D.C. (5 Cranch) 390, 391, Fed.Cas. No. 16458 (1838). Although this statute was amended in 1865 by striking the requirement that a battery accompany the assault with intent to kill, 13 Stat. 421 (1865), Rev.Stat.D.C. §§ 1144, 1150, the courts continued to read it as being broader than the common law crime of assault with intent to commit murder: "the statute provides for punishment of any persons who shall be convicted of ... an assault with intent to commit a felonious homicide, either manslaughter or murder." *United States v. Angney,* 17 D.C. (6 Mackey) 66, 79–80 (1887); *Davis,* 16 App.D.C. at 444–45.

The original D.C.Code incorporated the language of this statute. 31 Stat. 1321, § 803 (1901); *see Coratola v. United States,* 24 App. D.C. 229, 231 (1904), and it has been carried forward without change into the present § 22–501. As noted earlier, § 22–501 consistently has been read to require a specific intent to kill, *see supra* note 7, but has never been read to require malice. *Accord* 40 C.J.S. *Homicide* § 73 (1944) ("There is a well recognized distinction between an assault with intent to murder and an assault with intent to kill. Malice is a necessary element to constitute an assault with intent to murder but it is absent in an assault with intent to kill or commit manslaughter.") (footnotes omitted).

**11.** Contrary to an argument presented by the government, this fact is not altered simply because the existence of adequate provocation, justification, or excuse is commonly labeled a defense upon which the defendant bears the burden of production. *United States v. Alexander,* 152 U.S.App.D.C. 371, 391, 471 F.2d 923, 943, *cert. denied,* 409 U.S. 1044, 93 S.Ct. 541, 34 L.Ed.2d 494 (1972). Once the issue of provocation, justification, or excuse is in the case, the government must prove its absence beyond a reasonable doubt in order to show malice. *Id.* at 391–92 & n. 53, 471 F.2d at 943–44 & n. 53. Accordingly, when the government is aware that a suspect claims there are mitigating circum-

The offense of assault with intent to kill thus encompasses assaults committed with the state of mind associated with certain types of voluntary manslaughter, *see supra* note 9, as well as assaults carried out with an intent to commit murder. *See Davis v. United States*, 16 App.D.C. 442, 444–45 (D.C.Cir.1900); *United States v. Angney*, 17 D.C. (6 Mackey) 66, 79–80 (1887); *accord Ex parte Brown*, 40 Fed. 81, 83 (C.C.W.D.Ark.1889); *State v. Hall*, 59 N.C. App. 567, 571–75, 297 S.E.2d 614, 617–18 (1982); *Commonwealth v. Hebert*, 373 Mass. 535, 536–38, 368 N.E.2d 1204, 1206 (1977); *State v. Collis*, 243 Or. 222, 230–32, 413 P.2d 53, 57 (1966); *Marks v. State*, 230 Md. 108, 111–12, 185 A.2d 909, 911 (1962), *cert. denied*, 373 U.S. 918, 83 S.Ct. 1308, 10 L.Ed.2d 417 (1963); *State v. Barker*, 68 N.J.L. 19, 23–28, 52 A. 284, 286–87 (Sup.Ct. 1902); C. TORCIA, WHARTON'S CRIMINAL LAW § 199 (1979).

Statutes proscribing the offense of assault with intent to commit murder, on the other hand, uniformly have been read to require proof of malice, "leading to a charge of murder if death should ensue." *Marks*, 230 Md. at 112, 185 A.2d at 911; *see, e.g., Ex parte Bayne*, 375 So.2d 1239, 1244 (Ala.1979); *People v. Stevenson*, 79 Cal.App.3d 976, 986, 145 Cal.Rptr. 301, 307 (1978);[12] Moreover, a number of jurisdictions, recognizing the limited reach of the assault with intent to commit murder offense, have created separate crimes of assault with intent to murder and assault with intent to commit manslaughter. *See,*

*e.g., United States v. Barnes*, 15 M.J. 121, 121–22 & n. 1 (C.M.A.1983); *State v. Townsend*, 238 N.W.2d 351, 354 (Iowa 1976); *see also* Va.Code § 18.2–51 (1982) (making it a Class 3 felony to maliciously assault with intent to kill, and a Class 6 felony to commit the same acts without malice). Thus, contrary to the government's position, "it is incorrect to say that assault with intent to commit murder requires proof of specific intent to kill; more accurately, one should speak of specific intent to commit murder." *People v. Heffington*, 32 Cal.App.3d 1, 11, 107 Cal.Rptr. 859, 866 (1973); *accord People v. Baca*, 180 Colo. 166, 167–69, 503 P.2d 348, 349 (1972) (en banc).

The distinction between the terms assault with intent to kill and assault with intent to commit murder is, therefore, not merely a matter of semantics. The two offenses involve different—albeit frequently overlapping—states of mind.[13] In light of this established distinction between assault with intent to kill and assault with intent to commit murder, we are hesitant to conclude that Congress, in enacting § 16–2301(3)(A), understood the two terms to be synonymous.

Our reluctance to accept the government's position is bolstered by the legislative history of § 16–2301(3)(A). The initial House version of that section, which eventually was enacted as § 16–2301(3)(A) in its present form, excluded from the definition of "child" any person over sixteen charged with *"murder, manslaughter,"* rape, may-

---

stances regarding his state of mind at the time of a homicide, a prosecutor should not bring or maintain charges involving malice unless he or she has "sufficient admissible evidence" to persuade the jury that the suspect indeed acted with malice—i.e., acted with an intent to kill *and* without adequate provocation, justification, or excuse. ABA STANDARD FOR CRIMINAL JUSTICE 3–3.9(a) (1979); *see also* MODEL CODE OF PROFESSIONAL RESPONSIBILITY DR 7–103(A) (1979) (making it unprofessional conduct for a prosecutor to institute or maintain criminal charges if he or she knows or it is obvious that the charges are not supported by probable cause).

**12.** Also see *People v. Moles*, 10 Cal.App.3d 611, 615, 89 Cal.Rptr. 226, 229 (1970) ("[A]n intent to

*kill* is not sufficient to sustain a conviction of murder; malice must be proved before the killing is murder. Logically, an assault with intent to commit *murder,* as contrasted with an intent to *kill,* would seem to require proof of the same element, the state of mind of malice.") (emphasis in original).

**13.** It is also worth noting that because assault with intent to commit murder is not a specific intent crime in some states, *see, e.g., Wells v. State*, 8 Md.App. 510, 520–22, 261 A.2d 181, 187 (1970), and because malice may be found even where there is no intent to kill, *see supra*, pp. 671–672, the offense of assault with intent to commit murder may reach acts that fall outside the scope of assault with intent to kill.

hem, arson, kidnapping, burglary, robbery, *any assault with intent to commit any such offense,* or assault with a dangerous weapon." H.R. 16196, 91st Cong., 2d Sess. § 121, 116 CONG. REC. 8129 (1970) (emphasis added). The bill would have treated six-teen- and seventeen-year-old persons accused of assault with intent to commit either murder or manslaughter as adult defendants. The purpose of this section was to provide "a better mechanism for separation of the violent youthful offender and recidivist from the rest of the juvenile community." H.R. REP.NO. 907, 91st Cong., 2d Sess. 50 (1970).

The Senate Committee on the District of Columbia rejected this language.[14] The Senate Committee refused to "take so dim a view of juveniles in the 16 to 18-year-old age group generally as to presume sophistication in every case involving serious misconduct—and especially in cases involving first offenders or where any previous offense was committed before the onset of a relatively significant degree of discretion." S. DOC. No. 620, 91st Cong., 1st Sess. 8 (1969). For this reason, the bill reported by the Senate Committee authorized the prosecution of sixteen and seventeen year olds as adults only "when they are charged with certain serious felonies *and* have a record of a previous offense since age 15." *In re. C.S.,* 384 A.2d at 409 (emphasis in original); *see* 115 CONG. REC. S17607 (daily ed. Dec. 22, 1969) (remarks of Committee Chairman Tydings) ("First offender children will not automatically be tried as adults"). This bill passed in the Senate. 115 CONG. REC. 40720 (1969).

The definition of "child" agreed upon by the Conference Committee and later enacted as § 16–2301(3)(A) represented a "compromise" between the House and Senate bills. 116 CONG. REC. 24346 (1970) (Statement of Senate Floor Managers Regarding

Conference Bill). The Senate conferees agreed to recede from the position that first time offenders should never be subject to adult prosecution. In exchange, the conference bill "greatly reduce[d] the number of cases which the House bill would have automatically transferred to the adult court for trial." *Id.* at S11384. The definition of "child," as finally enacted in § 16–2301(3)(A), thus represents a policy judgment that is "both negative and positive," *Bland,* 153 U.S.App.D.C. at 257, 472 F.2d at 1332: it attempts to exclude from the juvenile system persons accused of specified "grave offenses," 116 CONG. REC. 24346, while at the same time preserving the special rehabilitative benefits of that system for all other juveniles.

Two of the offenses removed from § 16–2301(3)(A) were manslaughter and assault with intent to commit manslaughter. Thus, to the extent § 22–501 permits a person to be charged for an assault committed with the state of mind required for manslaughter, it appears contrary to legislative intent to subject a juvenile charged under that section to criminal treatment.

Not only could the government's interpretation of § 16–2301(3)(A) lead to situations in which juveniles would be prosecuted as adults under § 22–501 in contravention of the apparent legislative purpose underlying § 16–2301(3)(A), but it also could lead to inequitable and anomalous results. The government's position would make it possible for a seventeen-year-old youth who committed an assault with a specific intent to kill—but who acted with adequate provocation, justification or excuse—to be charged and tried as an adult under § 16–2301(3)(A) only so long as the victim of the assault survived. If the victim died, the crime would be manslaughter and the youth could not be tried as an adult without prior judicial approval pursuant to

---

**14.** The language in the original House bill was derived from a bill proposed by the Nixon Administration and referred to the Senate Committee on the District of Columbia. S. 2981, 91st Cong., 1st Sess., 115 CONG.REC. 40719 (1969); *see* Darling, *Youthful Offenders and Neglected Children Under the D.C. Crime Act,* 20 AM.U.L.REV. 373, 381–84 (1971).

§ 16–2307.[15] Accordingly, as between two juveniles—each of whom struck another intending to cause death, but each of whom acted with a good faith although unreasonable apprehension that their actions were necessary to their self defense—the one whose victim died would be guilty of manslaughter, *see United States v. Heath*, 20 D.C. (9 Mackey) 272, 287–88 (1891), and sheltered from prosecution as an adult, while the one whose victim survived would be subject to adult prosecution at the discretion of the United States Attorney. This hardly seems consistent with any congressional policy connected with § 16–2301(3)(A).

Finally, we note that Congress has recognized the difference between the terms assault with intent to commit murder and assault with intent to kill in 18 U.S.C. § 3185(1), (15) (1982). That statute permits officials in the United States to arrest, detain, and extradite persons accused of certain listed offenses committed in a foreign country or place "occupied by or under the control of the United States." The statute first lists "[m]urder and assault with intent to commit murder." 18 U.S.C. § 3185(1). A later provision, in the same list of offenses, authorizes arrest and extradition for the offenses of "[m]urder," "manslaughter," and "assault with intent to kill," when committed under certain circumstances "on the high seas." 18 U.S.C.

§ 3185(15). Although not definitive evidence of the legislative intent underlying § 16–2301(3)(A), 18 U.S.C. § 3185's use of the term "assault with intent to commit murder" in conjunction with the offense of murder standing alone, but "assault with intent to kill" when murder and manslaughter are both involved, suggests that Congress—at least in one instance—has appreciated the distinction between the two terms.[16]

**B. *Appellant's Interpretation of § 16–2301(3)(A)***

Appellant focuses on the plain language of § 16–2301(3)(A) and asks this court to construe that provision to exclude from the definition of "child" only those juveniles actually charged with assault with intent to commit murder. He argues that such a crime could be charged under D.C.Code § 22–503 (1981), which provides:

> Whoever assaults another with intent to commit any other offense [aside from those listed in § 22–501 and § 22–502] which may be punished by imprisonment in the penitentiary shall be imprisoned for not more than 5 years.

Because the offense of murder, D.C.Code §§ 22–2401, –2403 (1981), is not listed in § 22–501 or § 22–502, and is punishable by imprisonment, assault with intent to commit murder could be charged under the literal language of § 22–503.[17]

---

**15.** We note that maximum penalty for both manslaughter and assault with intent to kill is 15-years' imprisonment. D.C.Code §§ 22–501, –2405 (1981). Consequently, an adult criminal defendant charged with assault with intent to kill based on the factual scenario described in the text would not receive any undeserved benefit from his victim's death.

**16.** Also see Indian Crimes Act of 1976, Pub.L. No. 94–297, § 2, 90 Stat. 585 (1976), amending 18 U.S.C. § 1153 by changing the term "assault with intent to kill" to "assault with intent to commit murder" in order to make that section conform to other statutory provisions dealing with crimes committed on Indian Reservations. *See* H.R.Rep. No. 1038, 94th Cong., 2d Sess. 6 (1976), U.S.Code Cong. & Admin.News 1976, p. 1125.

**17.** It has also been suggested that a person could be charged with assault with intent to commit murder under D.C.Code § 49–301 and § 22–107 (1981). Section 49–301 states that the common law (including common law crimes) remains in force in the District except insofar as it is "inconsistent with, or ... replaced by" a provision of the D.C.Code. *See United States v. Davis*, 83 U.S.App.D.C. 99, 100, 167 F.2d 228, 229, *cert. denied*, 334 U.S. 849, 68 S.Ct. 1501, 92 L.Ed. 1772 (1948). Section 22–107 authorizes a maximum five-year prison sentence for persons "convicted of any criminal offense not covered by the provisions of any section of this Code." This includes common law crimes "for which no other provision had been made." *Fletcher v. United States*, 42 App.D.C. 53, 63 (1914). However, because these two sections apply only when no other section of the Code addresses a crime, and because § 22–503 appears to provide an equally sound statutory basis for instituting a

The problem with this interpretation of § 16–2301(3)(A) is that it assumes Congress acted in a manner inconsistent with the policies underlying the sections of the D.C. Code dealing with various types of assault. The D.C.Code contains separate provisions "for four kinds of assault with descending degrees of severity: [1] D.C.Code § 22–501, Assault with intent to kill, rob, rape, or poison (15 years maximum); [2] D.C. Code § 22–502, Assault with intent to commit mayhem or with a dangerous weapon (10 years); [3] D.C.Code § 22–503, Assault with intent to commit any other offense (5 years); [4] D.C.Code § 22–504, Simple Assault (1 year)." *Ingram v. United States,* 122 U.S.App.D.C. 334, 337, 353 F.2d 872, 875 (1965). Appellant's position assumes that Congress intended to place assault with intent to commit murder—undoubtedly the most serious form of aggravated assault—in the statutory category providing the third least severe punishment. This runs counter to the hierarchy, or "gradient of aggravated assaults," suggested by the statutory scheme. *Id.*

Appellant's position would also lead to inequitable and anomalous results in certain cases. A juvenile who pointed a gun at another in an attempt to commit a robbery could be charged under § 22–501, tried as an adult under § 16–2301(3)(A), and sentenced to up to 15-years imprisonment. A juvenile who actually shot another with the intent of committing murder, but who failed to cause death, would be subject to prosecution as an adult under § 16–2301(3)(A) only if a charge were brought under § 22–503, with the maximum prison sentence being five years. (In this latter situation, of course, the juvenile could be subject to prosecution under § 22–501 if transferred under § 16–2307.)

### IV. CONCLUSION

What has been said already makes clear that neither the government's nor appellant's interpretation of § 16–2301(3) is fully satisfactory. While recognizing that a

charge of assault with intent to commit murder, we decline to hold that the common law crime

search for the actual intent of the legislature is often unrealistic, *see Peoples Drug Stores, Inc. v. District of Columbia,* 470 A.2d 751, 754–55 n. 4 (D.C.1983) (en banc), we are convinced that the purpose of the relevant language in § 16–2301(3)(A) is to authorize the prosecution of certain juveniles as adults only when they are charged with an assault committed with a malicious intent to kill. The government interprets § 16–2301(3)(A) too broadly, in order to reach at least some cases where malice is not present. Appellant's interpretation would accomplish the above-stated statutory purpose but at the cost of reducing the applicable punishment in a manner inconsistent with the assault provisions of the D.C. Code. The only way to implement fully the statutory purpose underlying § 16–2301(3)(A) would be to redraft the assault provisions of the Code to provide separately for assault with intent to commit murder and assault with intent to commit manslaughter. We have no power to consider this option.

We have previously recognized that "the decision whether an accused is subject to juvenile or adult court is a vitally important one which affects not only the length of confinement but many collateral interests such as the loss of civil rights, the use of an adjudication in subsequent proceedings and disqualification for public employment." *Tucker,* 407 A.2d at 1071 (citing *Kent,* 383 U.S. at 556–57, 86 S.Ct. at 1054–55). As a result, we have held that § 16–2301(3) should be strictly construed in favor of juvenile treatment. *Id.* at 1070. Moreover, because § 16–2301(3)(A) makes conduct criminal which otherwise would be non-criminal, that section is subject to the well-settled rule favoring lenity in the construction of penal statutes. *See Busic,* 446 U.S. at 406, 100 S.Ct. at 1752; *Henson v. United States,* 399 A.2d 16, 21 (D.C.), *cert. denied,* 444 U.S. 848, 100 S.Ct. 96, 62 L.Ed.2d 62 (1979). Accordingly, we adopt appellant's interpretation of § 16–

of assault with intent to commit murder survived codification of the criminal law.

2301(3)(A) and hold that a juvenile age 16 or 17 is excluded from the definition of "child," and thus is subject to adult criminal prosecution—without the necessity of a judicial transfer under § 16–2307—only when he or she is charged with assault with intent to commit murder.

Because appellant willingly went forward with his guilty plea and thus chose to permit jeopardy to attach, we need not set aside the conviction in this case. Instead, we remand this case to the trial court to complete its post-jeopardy ruling under § 16–2302. We have determined that appellant is indeed a "child" under § 16–2301(3)(A); the trial court must now "determine on the basis of the criteria in section 16–2307(e) whether to enter judgment or to refer the case to the [Family] Division for disposition." D.C.Code § 16–2302(b).

*So ordered.*

NEBEKER, Associate Judge, dissenting:

Common sense and principles of statutory construction compel me to conclude that appellant's "transfer" was not erroneous. Our concern is to determine whether, given the generic statutory language ("murder"), Congress intended to include assault with intent to kill within the purview of D.C. Code § 16–2301 (1981). I conclude that Congress so intended. An examination of the statutory definitions of the offenses included within § 16–2301 lends support to such a construction. Furthermore, our contrary holding creates an imbalance in the juvenile waiver system where less serious purposeful assaults do not require judicial judgment as a condition to waiver of juvenile process.

Congress's intent in passing § 16–2301 was to facilitate the transfer of sixteen and seventeen year-old juveniles charged with the most serious felonies. *In re C.S.*, 384 A.2d 407, 410–11 (D.C.1977).[1] Among these crimes is murder; also included are assaults with intent to commit any of the four crimes enumerated in that section. Read literally, then, § 16–2301 authorizes the transfer of these juveniles by an indictment for an assault with intent to murder.

One needs only to look to the original enactment defining the proscribed "Offenses Against the Person," at 31 Stat. 1321 (1901), to determine that assault with intent to kill is the statutory equivalent of assault with intent to murder. A common thread runs through Congress's statutory definitions of "Murder in First Degree" (Sec. 798) and "Murder in Second Degree" (Sec. 800). Whatever distinctions exist between the degrees of murder as defined by the statute, to be guilty of murder, the one charged must be one who "kills another." Thus, the common element in murder—no matter how refined by statute or common law—is the killing of a human.

In the very same subchapter that defines murder, at Sec. 803, Congress proscribed "Assault with Intent to Kill, and So Forth." Having just defined murder as to kill with purpose or malice, that is, to kill with intent, Congress proscribed unconsummated murder as assault "with intent to kill." Assault with intent to kill, then, is simply an incomplete murder without regard to the refinements of deliberation, malice, or other elements constituting murder in its differing degrees.

The majority effectively removes from the reach of § 16–2301 all juveniles who, though intending to do so, did not kill their victim—but leaves subject to waiver by indictment all those juveniles charged with assault with intent to rape, or to commit burglary (first degree), or armed robbery, all offenses equal to or less severe than assault with intent to kill (murder). This is

---

1. Congress stressed that:

   Because of the great increase in the number of serious felonies committed by juveniles and because of the substantial difficulties in transferring juvenile offenders charged with serious felonies to the jurisdiction of the adult court under present law, provisions are made in this subchapter for a better mechanism for separation of the violent youthful offender and the recidivist from the rest of the juvenile community.

   H.R.Rep. No. 907, 91st Cong., 2d Sess. 50 (1970).

not an appropriate result to achieve through lenity or strict construction, as professed by the majority.

I conclude that there is no defect in the waiver by indictment in this case. *Pendergrast v. United States*, 332 A.2d 919, 922 (D.C.1975). Accordingly, I would affirm.

